IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action No. 12-cv-02618-LTB

PETER J. CHAVEZ,

    Plaintiff,

v.

CAROLYN W. COLVIN, Commissioner of Social Security,

    Defendant.

_____

ORDER
_____

Plaintiff Peter J. Chavez appeals Defendant's (the "Commissioner") final administrative decision denying his claim for disability insurance benefits under Title II of the Social Security Act (the "Act"). Jurisdiction in this appeal is proper pursuant to 42 U.S.C. § 405(g). Oral argument would not materially assist in the determination of this appeal. After consideration of the briefs and the record, I affirm the Commissioner's decision.

**I. Statement of the Case**

A hearing on Plaintiff's claim was held before an administrative law judge (the "ALJ") on September 22, 2010. On November 12, 2010, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act. The Appeals Council denied Plaintiff's request for review thereby rendering the ALJ's November 12, 2010 decision the Commissioner's final decision for purposes of my review. Plaintiff timely filed this appeal seeking review of the Commissioner's final decision.

## II.  Statement of Facts
### A.  Background

  Plaintiff was born on October 23, 1965, making him 42 years old at the time of alleged disability onset date of April 18, 2008.  Administrative Record ("AR") 100.  On his alleged disability onset date, Plaintiff was employed at a hospital assisting psychiatric patients with their daily living activities.  AR 33.  In the past, Plaintiff has also worked on assembly lines at electronics shops and as a machinist. AR 35 & 38.

  Plaintiff alleges that he became disabled on April 18, 2008 when he was injured while lifting a psychiatric patient to give him a bath.  AR 100.  On his alleged disability onset date, Plaintiff weighed approximately 430 pounds.  AR 138.  Plaintiff claimed disability as a result of " back injury, heart attack, and diabetes."  AR 139.   Plaintiff was insured through September 30, 2008 and therefore had to establish that he was disabled on or before that date.  AR 12.

### B.  Medical Evidence

  Plaintiff sought treatment from Richard Nanes, D.O., shortly after his lower back injury in April of 2008.  Dr. Nanes noted that Plaintiff had a history of insulin-dependent diabetes, morbid obesity, sleep apnea, hypertension, and hyperlipidemia.  AR 398.  This same history, as well as asthma, peripheral nueropathy, severe noncompliance, tobacco abuse, and chronic obstructive pulmonary disease, is also reflected on hospital records from November of 2007 when Plaintiff sought treatment for chest pain.  AR 183 & 185.  After discharge from the hospital in 2007, Plaintiff participated in a sleep study and was diagnosed with  "very severe obstructive sleep apnea" that was "correct[ed] ... with CPAP at 14 cm of water pressure using a large ResMed full face mask C-Flex system, heated humidity."  AR 218.

Dr. Nanes initially assessed Plaintiff with an acute lumbar strain; restricted him from any lifting, carrying, kneeling, or climbing; limited him to one hour of standing and walking per day; and prescribed pain medication and physical therapy. AR 398. On May 23, 2008, Dr. Nanes modified Plaintiff's restrictions to include up to 2 hours of walking and standing a day and 8 hours of sitting and ordered an MRI though he thought Plaintiff might be too large for the machine. AR 391. On June 17, 2008, Dr. Nanes again modified Plaintiff's restrictions to include no lifting or carrying over 10 pounds and up to 4 hours a day of sitting. AR 382. Dr. Nanes also referred Plaintiff to Kenneth Finn, M.D., for pain management and noted that they were unable to obtain an MRI as a result of Plaintiff's obesity and that "there may be a disk involved" with Plaintiffs ongoing lumbar strain. *Id.*

On June 24, 2008, Plaintiff was seen by Dr. Finn who strongly encouraged finding an MRI machine that would accommodate Plaintiff's size but thought "[t]here may not be much to offer [Plaintiff] as ... significant limitations are going to be found given his morbid obesity." AR 234. Dr. Finn reported that Plaintiff could tolerate "15 minutes of standing, two hours of sitting and driving, and 30 minutes of walking" and that "[Plaintiff's] lifting capacity is ten pounds." AR 233.

On July 8, 2008, Dr. Nanes noted that he had obtained the results of a CT scan but that it was not very helpful "as it really does not show any disks." AR 378. Dr. Finn also received the results of Plaintiff's CT scan via a telephone call with a hospital technician and reported that the scan revealed "pretty much lumbar spondylosis without any disk herniation or nerve impingement." AR 232.

As of July 29, 2008, Plaintiff had returned to work with restrictions of no lifting or carrying over 10 pounds and limited standing, walking, and sitting. AR 1102. Plaintiff reported though that he continued to experience back pain 80 % of the time that averaged a 4 on a scale from 1 to 10. *Id.* Plaintiff continued to work part-time with the same restrictions through September 9, 2008. AR 367 & 371. At his appointment with Dr. Nanes on that date, Plaintiff reported that he was doing better, and Dr. Nanes loosened his restrictions to allow him to lift and carry up to 15 pounds and opined that Plaintiff had a "resolving lumbar disk protrusion that is slowly going back into place." AR 363.

Plaintiff continued to see Dr. Nanes after his last insured date of September 30, 2008. On October 15, 2008, Dr. Nanes assessed Plaintiff with chronic lumbar strain with probable disk protrusion and noted that Plaintiff continued to work with restrictions of no lifting or carrying over 15 pounds and no squatting activities. AR 359. On November 6, 2008, Dr. Nanes authorized Plaintiff to return to work with no restrictions. AR 357. Plaintiff missed some work in January of 2009 following a flare-up in his back pain but Dr. Nanes again authorized Plaintiff to return to work without restrictions on January 26, 2009. AR 352. On February 1, 2009, Dr. Nanes reported that Plaintiff was suffering from severe pain in his lower back; could barely stand; was walking very slowly with a limp; and unable to work. AR 1103.

On February 26, 2009, Plaintiff was admitted to the hospital "due to unstable angina and subendocardial myocardial infraction." AR 242. Plaintiff underwent heart catheterization and placement of a stent and had no further chest pain upon his release. *Id.* Hospital records from this time note that several attempts had been made to treat Plaintiff's obstructive sleep apnea but Plaintiff was noncompliant with the prescribed CPAP and did not want further evaluation for

surgery on his throat. *Id.*

On March 12, 2009, Dr. Nanes reported that Plaintiff was not working and continued to suffer from severe back pain. AR 1105. Dr. Nanes authorized Plaintiff to return to work with permanent restrictions of no lifting or carrying over 20 pounds. *Id.*

On referral from Dr. Nanes, Plaintiff began seeing Divakara Kedlaya, M.D., in March of 2009 for pain management. Dr. Kedlaya assessed Plaintiff with chronic low back pain; lumbar spondylosis; morbid obesity; "recent MI-S/p stenting;" diabetes mellitus with insulin; and resistance. AR 420. Dr. Kedlaya prescribed pain medication to Plaintiff and strongly recommended a weight loss program with diet and exercise. *Id.* Dr. Kedlaya continued to see Plaintiff periodically, and the record includes a handwritten note from Dr. Kedlaya dated November 19, 2009 that Plaintiff was "permanently totally disabled" with no explanation. AR 1155.

On May 5, 2009, Plaintiff had an MRI that was "slightly compromised" by Plaintiff's size which revealed "multi-level degenerative disk disease." AR 1089-90. On June 12, 2009, Dr. Nanes noted that the MRI showed "several levels of disk bulging and protruded disks, with a lot of lumbar degeneration as well." AR 1107. Dr. Nanes stated that Plaintiff was to be kept on permanent restrictions of no lifting or carrying over 20 pounds and that Plaintiff was "at least doing better, if not in constant pain, and overall, medically stable." *Id.* Dr. Nanes also noted that Plaintiff continued to see his cardiologist for his heart condition which was apparently stable. *Id.*

### C. Plaintiff's Disability Hearing

At the September 22, 2010 hearing, Plaintiff testified that he weighed 410 pounds; was largely unable to perform household chores; suffered from sleep apnea which caused him to fall

asleep while working; had numbness in his fingers and feet from neuropathy associated with his diabetes; and continued to have problems from a broken foot in 2000. AR 31 - 33 & 37.

The ALJ asked the vocational expert ("VE") if an individual with the same age, education, and vocational history as Plaintiff who could function at the semi-skilled, light exertional level; stand, sit, and walk for up to 6 hours in an 8-hour workday with the ability to alternate between postures as necessary with sitting being the predominant posture; and occasionally climb stairs and ramps, stoop, and crouch but never climb ladders, ropes, or scaffolds, balance, or withstand concentrated exposure to extreme cold, vibrations, and hazards such as unprotected heights could perform any of Plaintiff's past relevant work. AR 43. The VE responded that such an individual could still work as an electronics assembler but that there would some erosion of available work because some employers would not allow Plaintiff to sit while performing this work. AR 43-4.

The ALJ then asked the VE if there were other jobs in the regional and national economies that an individual with the same RFC would be capable of performing. AR 44. The VE responded that such an individual could work as an assembler of small products, a cashier, or a companion. *Id.* Upon questioning from Plaintiff's attorney, the VE opined that an individual who could only lift a maximum of 10 pounds would probably not be able to perform Plaintiff's past work as an electronics assembler or any of the other jobs he identified in response to the ALJ's questioning. AR 46-8.

**D. The ALJ's Decision**

In his ruling, the ALJ applied the five-step sequential process outlined in 20 C.F.R. §§ 404.1520(a) & 416.920(a). At the first step of the sequential process, for purposes of

expediency, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of April 18, 2008 through his last insured date of September 30, 2008 despite some evidence to the contrary. AR 14. At the second step, the ALJ determined that Plaintiff had severe impairments of diabetes mellitus, disorders of the spine, sleep apnea, and obesity. *Id.* At the third step, the ALJ determined that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 15.

At the fourth step of the sequential process, the ALJ determined Plaintiff had the RFC to perform semi-skilled light work but was limited to standing, walking, and sitting for up to 6 hours each in an 8-hour workday with the ability to alternate between postures as needed; pushing and pulling at the light exertional level; no balancing or climbing of ladders, ropes, and scaffolding; occasional kneeling, stooping, crouching, and climbing of stairs and ramps; and no concentrated exposure to extreme cold, vibrations, and other hazards. *Id.* Based on the assessed RFC, the ALJ concluded that Plaintiff remained capable of performing his past relevant work as an electronics assembler through his last insured date of September 30, 2008. AR 19. Alternatively, the ALJ concluded that there were other jobs existing in the national economy that Plaintiff was capable of performing such as assembler of small products, cashier, and companion. AR 19-20. Thus, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. AR 20.

### III. Standard of Review

In reviewing the Commissioner's decision, I must determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal

standards were applied. *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1992); *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hamilton, supra,* 961 F.2d at 1498. I "may neither reweigh the evidence nor substitute [my] discretion for that of the Administrative Law Judge." *Kelley v. Chater,* 62 F.3d 335, 337 (10th Cir. 1995). Where evidence as a whole can support either the Commissioner's decision or an award of benefits, the Commissioner's decision must be affirmed. *See Ellison v. Sullivan,* 99 F.2d 534, 536 (10th Cir. 1990).

## IV. Analysis

On appeal, Plaintiff argues that the ALJ erred (1) in assessing Plaintiff's credibility; (2) by not considering Plaintiff's May 5, 2009 MRI results in relation to his severe impairment of disorders of the spine; (3) by not treating Divakara Kedlaya as a treating source and giving substantial weight to his opinion regarding Plaintiff's RFC; and (4) in his assessment of Plaintiff's RFC. I disagree.

**A. The ALJ's Assessment of Plaintiff's Credibility**

The ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting affects of his impairments were not credible to the extent they were inconsistent with the assessed RFC based on "[Plaintiff's] alleged impairments, [Plaintiff's] testimony, and coalescence with the medical evidence." AR 16. The ALJ proceeded to discuss examples of inconsistent statements made by Plaintiff regarding his work history after his alleged disability onset date and the findings and opinions of two treating sources regarding Plaintiff's ability to work. AR 16-19.

Plaintiff first takes issue with the ALJ's purported failure to assess the functionally limiting effects of Plaintiff's sleep apnea on his ability to work. The ALJ noted, however, that there was evidence in the record that Plaintiff was diagnosed with sleep apnea as early as 1998 (AR 17), or 10 years prior to his alleged disability onset date. The fact that Plaintiff was able to work for years with this impairment (AR 35 & 38) is strong evidence undermining Plaintiff's credibility about its limiting effects. The ALJ also noted that a CPAP had been prescribed to Plaintiff to correct this impairment (AR 17), and the record contains numerous references to Plaintiff's noncompliance with this treatment and others (AR 242, 183 & 185). Thus, there is substantial evidence in the record supporting the ALJ's clear rejection of Plaintiff's claim that his sleep apnea rendered him unable to work because it caused him to fall asleep on the job.

Plaintiff also faults the ALJ for his use of boilerplate language in his assessment of Plaintiff's credibility. The use of boilerplate language "is only problematic when it appears 'in the absence of a more thorough analysis.'" *Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1170 (10th Cir. 2012 (*quoting Hardman v. Barnhart,* 362 F.3d 676, 679 (10th Cir. 2004)). Here, the ALJ did not merely conclude that Plaintiff's statements concerning the intensity, persistence, and limiting affects of his impairments were not credible to the extent they were inconsistent with the assessed RFC. Instead, the ALJ discussed Plaintiff's testimony and medical history at some length, including Dr. Nanes repeated authorizations for Plaintiff to return to work. AR 16-19. As such, Plaintiff's argument that the ALJ erred in his use of boilerplate language in assessing Plaintiff's credibility is without merit.

**B. The ALJ's Failure to Consider the Findings from Plaintiff's May 5, 2009 MRI**

The ALJ's opinion makes no reference to the findings from Plaintiff's May 5, 2009 MRI that showed herniated disks and disk degeneration presumably because these findings reflect the condition of Plaintiff's back approximately 7 months after Plaintiff's date last insured and are of limited relevance to the appropriate analysis. *See Potter v. Sec. of Health & Human Servs.,* 905 F.2d 1346, 1348-49 (10th Cir. 1990) ("... relevant analysis is whether the claimant was actually disabled prior to the expiration of her insured status."). Plaintiff argues that the ALJ's failure to consider or address these finding is in error. Although I agree that it would have been preferable for the ALJ to reference these findings, I conclude that his failure to do so does not warrant remand or reversal.

The ALJ gave significant weight to the findings and opinions of Drs. Nanes and Finn. AR 19. After reviewing the findings from Plaintiff's May 5, 2009 MRI, Dr. Nanes concluded that Plaintiff could work on permanent restrictions of no lifting or carrying over 20 pounds. AR 1107. Thus, there is significant evidence that Plaintiff's MRI findings do not establish an inability to perform light work even well beyond Plaintiff's last insured date. *See* 20 C.F.R. §404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.").

In addition, though Dr. Nanes noted limitations with the CT scan Plaintiff had during the relevant period of time, he authorized him to work with restrictions after reviewing the results. AR 1102. Dr. Finn reported no limitations with Plaintiff's CT scan and noted that it showed no disk herniation or nerve impingement. AR 232. Under these circumstances, I conclude that there was substantial evidence in the record as a whole to support the ALJ's findings regarding

the limiting effects of Plaintiff's assessed disorder of the spine during the applicable period of time and that the findings from Plaintiff's May 5, 2009 MRI are not sufficient evidence to require reconsideration or reversal on this issue.

## C.  The ALJ's Treatment of Dr. Kedlaya's Opinion

The ALJ's opinion makes no reference to Dr. Kedlaya's treatment of Plaintiff or his November 1, 2009 notation that Plaintiff was "permanently totally disabled."  The Commissioner does not dispute that Dr. Kedlaya qualifies as a treating source but argues that his opinions do not address the relevant time period since Dr. Kedlaya did not even begin treating Plaintiff until several months after his last insured date of September 30, 2008.

Although I again agree that it would have been preferable for the ALJ to reference Dr. Kedlaya's opinions, I conclude that his failure to do so does not warrant remand or reversal. First, I note that Plaintiff has failed to reference any specific opinions rendered by Dr. Kedlaya regarding his residual functional capacity beyond Dr. Kedlaya's unsubstantiated statement that Plaintiff was "permanently totally disabled."  This statement was recorded more than one year after Plaintiff's date last insured and is therefore of questionable relevance.  *See Potter*, *supra.* Furthermore, the ALJ was not required to give controlling weight or to attach any special significance to this statement because the determination of disability is reserved for the Commissioner.  20 C.F.R. § 404.1527(d)(1)-(3).

## D.  The ALJ's Assessment of Plaintiff's RFC

Plaintiff's argument that the ALJ erred in his assessment of Plaintiff's RFC primarily restates his arguments regarding the ALJ's assessment of his credibility and failure to discuss certain evidence already discussed above.  Plaintiff also asserts that additional limitations should

11

have been assessed as a result of a foot injury that Plaintiff allegedly suffered in 2001 (AR 38) and his obesity and diabetic neuropathy. Because Plaintiff offers no supporting argument or citations to the record in support of this assertion, it is easily dismissed. *See Chambers v. Barnhart,* 695 F.3d 1156, 1161 (10th Cir. 2004) (scope of review on appeal is limited to the issues adequately presented by the claimant).

## V.  Conclusion

Based on the applicable legal standards,  IT IS HEREBY ORDERED that the Commissioner's decision is AFFIRMED for the reasons set forth above.


Dated: May   21  , 2014 in Denver, Colorado.

BY THE COURT:


   s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE